Clerk will call the next case. For the first case, 3-14-0-2-9-0, Pekin Insurance Company, Appellate, by Peter Saragelis, v. Martin Cement Company, Appellant, by Brian O'Gallagher. Mr. O'Gallagher. May it please the Court, my name is Brian O'Gallagher. I'm here this morning asking for reversal of the trial court's ruling against my client, Martin Cement Company, in this insurance coverage dispute. We contend that the trial court erred in applying this Court's opinion in the Pekin Insurance Company v. United Contractors Midwest case. There are two main contentions we advance. We contend that the allegations against Martin in the underlying complaint are within the scope of coverage provided under the additional insured endorsement in the Pekin policy, even without consideration of any third-party complaints that were filed in the underlying case. We believe reversal is appropriate on that basis alone. We also contend that the trial court erred by declining to consider in her duty to defend analysis the third-party complaint that was filed in the underlying case by Martin's co-defendant, Frederick Quinn Corporation. To address the first point, I recognize that the parties in their briefs offered detailed discussions of the underlying allegations both in this case and in the underlying case that was at issue in the United Contractors decision. The critical point I wish to emphasize is that, as the Court is aware, in the United Contractors underlying case, the additional insured was a company named Cullinan that was a general contractor on a construction project. Cullinan had a subcontract with Pekin's named insured, a company named Derdell, to perform some tree removal services. During the course of that work, an employee of Derdell was injured when some machinery he was operating came into contact with some overhead power lines. That was Mr. Hill. Mr. Hill sued Cullinan on a negligence theory, and the theory put forth by Mr. Hill was that Cullinan had been negligent in allowing Derdell to work too closely to the hazard created by the overhead power lines. Mr. Hill did not allege that any equipment supplied or brought to the job by Derdell had failed and caused his injury. We think that is a critical distinction here because in the circumstances in which my client, Martin, was sued, Martin had a subcontract with Pekin's named insured, Platinum Steel. The subcontract called for Platinum to perform rebar work on an underlying construction project. During the course of the rebar work, an individual working for Platinum, Mr. Schwartz, alleges he was injured when a rebar cage on which he was working failed. He characterizes the failure in his complaint as the rebar cage breaking away and falling, which caused him to fall some distance and he alleges suffer an injury. Mr. Schwartz is suing Martin, alleging that Martin is responsible for the failure of the rebar cage. We have in the materials, we have in the record, the subcontract between Martin and Platinum. That subcontract indicates that Platinum is to provide the labor and equipment to be used during the rebar work. So, looking at the subcontract and looking at the allegations, we submit that the court can conclude and should conclude that Martin is being sued in the underlying case for the failure of equipment that Platinum was contractually responsible to provide and maintain. We submit that those allegations, even again without resort to consideration of any third-party pleadings, bring the claim against Martin within the scope of the additional insured endorsement on the Pekin policy. We contend that that scenario, where Martin is being sued for the failure of equipment Platinum was responsible for, constitutes vicarious liability imputed to Martin from Platinum as those terms are used in the additional insured endorsement. And we said in the briefs, and I want to reiterate it here, I think we're asking that the court give those terms, vicarious liability imputed to and from, just their plain and ordinary meaning. Those terms are not defined in the Platinum policy and I respectfully submit that a reasonable reading of those terms and just a common understanding of what they mean shows that the requirements of the additional insured endorsement are satisfied by the pleadings, the complaint that was directed against Martin. Now, Pekin has contended that the coverage is not triggered because Mr. Schwartz has not sued Martin, asserted a claim for vicarious liability. And I contend what they mean by that is that Martin has not been sued in a complaint that contains a count called vicarious liability. And I don't think that's the standard. I think the standard in these cases is what do the facts allege, rather than what particular label is assigned to any particular cause of action in the underlying complaint. However, there is a claim, count one of the complaint directed against Martin is entitled retained control. The court is well aware that Illinois courts have expressly held that, quote, a contractor by retaining control over the operative details of its subcontractor's work may become vicariously liable for the subcontractor's negligence. That is the Cochran v. George Sollett construction case that was also discussed in great detail in the ROTS building development case issued by this court. And it's been discussed in a lot of construction accident cases in Illinois over the years. So if the standard, and I don't think it is, but if the standard was, hey, is there a vicarious liability claim, express vicarious liability claim asserted in the underlying complaint, I would submit there is. Because the retained control claim is at least potentially premised on vicarious liability. That is not to say, and I always make this point, we're not conceding the accuracy of any such allegations. We think we're not liable. Martin is not liable in the underlying case. I am just suggesting that that is one of the theories that's in this complaint, and it triggers coverage under the Pekin policy, even under their most restrictive reading of the additional insured endorsement. That is the first basis I would ask for reversal on, is just the language of the underlying complaint matched against the language in the Pekin policy. There is a second basis I would ask for reversal on, and that's the issue of the consideration that needs to be given to the third party complaint that Frederick Quinn Corporation, which is Martin's co-defendant. The third party pleading that Frederick Quinn filed in the underlying case also can and should be considered in the duty to defend analysis. Pekin has argued that United Contractors precludes consideration of that pleading in the duty to defend analysis, and I don't think it does. In the United Contractors' opinion, this court declined to consider Cullen's own pleading based on the conclusion that it was self-serving and potentially at least was filed to create coverage rather than serve a legitimate defense purpose or at least had mixed motives. Those considerations do not preclude consideration of Quinn's pleading here. We've put in the statement of facts. It's very clear. Quinn's third party complaint was filed before Pekin initiated the coverage action. Quinn, during the course of the coverage action, renounced any claim to coverage under Pekin's policy as an additional insured. Yet, Quinn's third party pleading remains pending. So, Quinn's pleading is free, I would submit, from any taint and any worry that it was somehow self-serving. First of all, it couldn't be self-serving as to Martin because Quinn and Martin are different parties. But more than that, it was clearly a stand-alone pleading that was filed independent of any coverage dispute between Quinn and Pekin. And on that basis, I think the law, as it has developed in the appellate court over the last several years, allows for consideration of that pleading in the duty to defend analysis. And I speak here of the rule in the American economy versus Halliburton Root decision, the Illinois and Casco versus Waukegan Steel sales decision, as well as this court's more recent decision in February, Farmers Automobile Insurance Association versus Newman, which is 2015 ILAP 3rd 140026. That case was obviously issued several months after the briefing was closed in this matter, but I would submit it held, in a different factual context, it held that a pleading which was not filed by the party seeking coverage... This was not cited in the briefing? No, no, sir. No, it was not. Perhaps we could file a written motion to allow that, and then we'll give the other side seven days to respond. Seven days to prepare the other side? Sure, and I wouldn't anticipate, Judge, that I'd be filing something more than a page, page and a half. I appreciate that. In any event, I believe the law is clear that you can consider Quinn's pleading in the duty to defend analysis, and that once you do so, it again would provide material that would trigger people's duty to defend because Quinn's pleading alleges that platinum is at fault and responsible for the underlying injury. It alleges that platinum improperly maintained and controlled the area where Schwartz was working. It alleges that platinum failed to provide adequate safeguards to prevent Schwartz from injury, and it alleges that platinum failed to provide Schwartz with a safe place to work. Well, the significance of that is those are all essentially identical allegations, or they're essentially identical to allegations that were directed against Martin in Mr. Schwartz's complaint. So you have a situation where Martin and platinum are being sued based on the same alleged acts or omissions, which is for them to provide a safe place for Mr. Schwartz to work and to control the area where he was working and make it safe for him. When you have that situation where the named insured and the additional insured are being sued for the same conduct, at the pleading stage, which is where you have to assess the duty to defend, you cannot conclude that the claim against Martin is not based on vicarious liability imputed from platinum. So I would submit that once Quinn's pleading is considered, the duty to defend is triggered, and it's an alternative method to trigger the duty to defend, although I contend that the duty to defend was triggered by the complaint in the first case, but by the facts that were alleged. We have a section in our brief talking about Martin's own pleading. I stand on that. I don't need to belabor those points here. At the end of our brief, we noted that we've always maintained that if there is duty to defend, he has a primary non-contributory defense obligation. I don't believe that's a disputed point, but I included that at the conclusion of my brief. I'd like to save whatever time I have left for rebuttal and just conclude my remarks here unless there are any questions. Are there any questions? No. And you'll have five minutes for rebuttal. Thank you, Judge. Mr. Sirigelis. Good morning, Your Honors. May it please the Court, Peter Sirigelis on behalf of the Appealee Peking Insurance Company, accompanied by Robert Chalmers, at counsel table. This case is about three things. First, what does the endorsement mean? Second, what is the duty to defend stated? And three, what materials outside of the traditional eight corners test can this Court consider in the duty to defend? The first thing I want to address is what the endorsement means. United Contractors found that the endorsement means, for purposes of additional insured coverage, that the additional insured has to have an allegation of vicarious liability made against them. Vicarious liability means liable yet blameless. The interesting thing about Martin's argument is that it seeks to expand the terms of vicarious and imputed for some sort of ambiguity argument that is really unnecessary for this Court because Peking is saying the same thing that Martin says the endorsement means, and that is vicarious liability. There's really no need to spend time on that point. The second thing is, is the duty to defend determined by looking at the allegations of the complaint versus the insurance policy, which has been the standard test in Illinois and applied for decades, or has the duty to defend test been so diluted that a court can venture past the allegations of the complaint  This Court answered that question recently in United Contractors at, well, I certainly don't need to cite it, but I will, 213-LF-120803, an opinion authored by Justice Wright. The duty to defend standard is determined by using the allegations of the complaint versus the insurance policy. In this case, when you look at the complaint, the underlying complaint is in the record at 631. There are no allegations of vicarious liability as there were no allegations of vicarious liability in United Contractors. The failure to specify a negligent act by the named insured, Pekin's named insured plant owner, is fatal to coverage under the endorsement, and that's at paragraph 28 of this Court's opinion. I didn't hear the cases cited in my opponent's argument, but in his brief he says, look to certain cases which endorse a far-ranging hypothetical analysis. Based on the complaint that this Court is to look at, we don't know what facts are out there. We don't know what facts weren't alleged or what facts could have been alleged. The point is that the plaintiff who drafted the complaint believed that it didn't have a vicarious liability claim against Martin and didn't plead it. We have to tie ourselves to the words of the complaint and make that determination. The point is that courts aren't allowed to look at underlying complaints and divine facts that aren't pled for the sake of finding coverage, and that's the better analysis and the one that, frankly, dictates predictable results. One of the cases that my opponent relies on is Pekin v. Hallmark Holmes, and it's out of this Court's Second District. I want to mention that since Hallmark Holmes, there's been a case called Pekin v. Precision Dose, and this is also a case that Pekin was involved in, and the Court actually said it's tied to the allegations of the complainant, and it did not endorse the far-ranging speculation that Hallmark Holmes did. In that case, it's 212 Ill. App. 2nd. 110195, and that language is in paragraph 60 of the Court's opinion. The last thing I want to touch upon is what materials outside of the traditional eight corners can this Court consider? Martin says look to the subcontract to determine the duties of the defendant. Pekin v. Pulte also said that, but that can't be the rule because Pekin didn't issue the subcontract, it issued the policy. A case that came out after Pulte within the First District clearly holds that the terms of the subcontract cannot alter the terms of the insurance policy based on the parallel evidence rule. That case is Westfield Insurance Company v. FCL Builders, and it can be found at 407 Ill. App. 730. Martin says look at the third-party complaints. Its third-party complaint is self-serving, as this Court found in United Contractors, and shouldn't be considered. Frederick Quinn's third-party complaint also shouldn't be considered because it also was seeking additional insured coverage under the Pekin policy. He didn't cite it in his argument, but the case that they principally rely on is Pekin v. Wilson out of the Supreme Court for the argument that the Court can consider things outside of the eight corners. But you have to consider the circumstances under which Pekin v. Wilson endorsed going outside of the policy. In that case, the underlying plaintiff alleged that he was the victim of a battery. That case involved a motion for judgment on the pleadings. So the defendant insured, Pekin's insured, pled that he committed the battery out of self-defense. The reason why the Supreme Court considered the insurer's pleading is because the plaintiff couldn't possibly have pled that the battery is caused by self-defense because he would have pled himself out of court. In this case, there was nothing stopping Schwartz from pleading vicarious liability against Mark. If anything, it doesn't take a cause of action away from him. Again, in his argument, he didn't discuss the true but unpleaded facts doctrine. I'll refer the Court back to Pekin v. Precision Dose at paragraph 41. The Court there determined that the true but unpleaded facts doctrine does not apply when the facts that supposedly exist out there are supplied by the insured. Just like in Precision Dose, there's nothing to suggest that Pekin had knowledge of any sort of vicarious liability when it made its determination to decline coverage. So that doctrine doesn't apply, and that's found at paragraph 43 and 44 of Precision Dose. I'm going to suggest to the Court that it not look at Frederick Quinn's pleading. I'm going to suggest to the Court that it not look to the subcontract. But if you do, I would suggest there's no allegation of vicarious liability made either in the subcontract or in Frederick Quinn's third-party complaint. And in reply, I'd venture to say that if the Court asked my opponent where he found an allegation of vicarious liability in Frederick Quinn's pleading, he couldn't point you to it. As far as 414 goes, Platinum here was a subcontractor, and the law presumes that a contractor, here Martin, is not liable for the acts of the subcontractor under Restatement 414 unless the contractor controls the operative details of the work that the subcontractor performs. There's no such allegation there. And there were no such, and it's the same really scenario as in United Contractors when the Court cited this Court's 2006 opinion, Mosiah v. Rotts Building and Development at 369 Hill Ave. 3, 344. In conclusion, the majority in United Contractors got this case right. That case is on all fours with this one, I would ask that you affirm. Unless there are questions. Thank you very much, Mr. O'Gallagher. Thank you. Initially I just want to point out one thing that I'm slightly confused about from counsel's argument. I don't believe there was an objection in the brief to consideration of the subcontract in this whole analysis, at least not one that I saw. I think in court today he suggested that we shouldn't be considering the subcontract. Again, I would encourage everyone, myself included, to go back and take a look at the briefs because I didn't think that was a controversial proposition here. To the extent that it is, we did cite case law in our brief, and I'll just reiterate it briefly about that point. There is authority under Pekin v. Wilson and Halliburton Root and EMC v. Waukegan for consideration of the subcontract between the name insured and the additional insured in this context. Again, the analysis is in the briefs, and again, I didn't think it was a controversial point. To counsel's suggestion that the court shouldn't consider Quinn's pleading, again, I didn't hear any articulation by counsel of the reason not to, other than they don't want you to. There was no refutation or refuting of the fact that similar pleadings were considered in the Halliburton Root case and in Casco v. Waukegan Steel case. I think the Halliburton Root case is very important here because Pekin v. Wilson, the Supreme Court case we have on this general topic, although it wasn't considering additional insured endorsement, cited Halliburton Root as setting forth the proper standards for what extrinsic evidence to consider in this context. And that case did permit consideration of the third party pleading filed again by somebody other than the additional insured seeking coverage. And I just think factually, Pekin cannot ignore the fact that Quinn isn't Martin, and Quinn withdrew its request for coverage, and Quinn filed this pleading before the coverage action existed. So we're moving from United Contractors in Pekin's eyes, United Contractors' view of saying, hey, this particular pleading filed by the additional insured after the coverage action existed was self-serving, that's United Contractors, into a new realm, a new role, where no third party pleadings filed by anybody against the name insured are going to be considered. And that would set up a direct conflict in this district with the first district, and I don't believe that's what United Contractors says. So I think in trying to preclude the consideration of Quinn's pleading, they're overstating the holding in the United Contractors. I would respectfully disagree with their interpretation of the opinion on that point. And then just more generally, about the actual allegations in the underlying case, the criticism I have of Pekin's argument, and what I'm saying here is a criticism I've made in different cases we've had, which is that there's a, I call it a one-size-fits-all analysis, I know they don't like that characterization. The additional insured never gets coverage, because the additional insured is always sued for its own negligence. So, period. That's the argument. There's no claim for vicarious liability, because typically in a construction accident case, you know, the Anti-Indemnification Act makes everyone liable for their own negligence. So, done, we're finished, that's our analysis. I don't think that's, that's not what United Contractors is saying. The fact that in United Contractors, the named insured, excuse me, the fact that Cullinan was sued for failing to supervise, or allowing the additional, allowing the named insured to work too closely to the hazard. Whereas here, Martin is sued for actually the failure of equipment supplied by the named insured has to mean something. I looked at your complaint, and when I see the allegations in the complaint concerning negligence, they appear to focus on the condition of the premises, and not the failure to provide equipment as required by the contract. Can you address that? Because I did say in the previous decision that the complaint dictates, it's the blueprint. And so tell me where in your blueprint you're alleging this failure to provide safe equipment as required by the contract. Well, the complaint directed against, against Platinum, the complaint directed against Martin. Your complaint, not, not the United Contractors case. Oh. Your complaint. Well, the complaint directed against Martin, okay, by Mr. Schwartz, it sues us, accuses us, and this is subparagraph G, I'm not sure of the paragraph, in count one, there's a paragraph in count one that enumerates a number of alleged acts of negligence from Martin, my client. And it says that Martin, by and through its agents, servants, and employees, were guilty of certain negligent acts, including the following, and there's a laundry list of items. One of them is failing to provide safe, suitable, and proper support for a plaintiff, Mr. Schwartz, to work off of. Okay, Mr. Schwartz is alleging that he fell from a rebar cage. We know, based on the contract, the rebar cage was supplied by Platinum. Martin is being sued for failing to provide support, an adequate rebar cage, to work off of. I think that is a fair construction of those allegations, and that puts us in a situation where Martin is being sued for something that Platinum was contractually responsible for. Now, I don't concede any liability on that. I'm just suggesting to you that that's a theory that wasn't asserted against Cullinan in the United Contractors case. I agree with you, Judge. There are allegations about premises. There are allegations about general supervision authority. I wouldn't concede, but I can... You're focusing on subparagraph G. I am. I also think those subparagraph B, where Martin is being sued for, quote, improperly. We were alleged to have improperly operated, managed, and controlled the aforesaid premises, so that as a direct and proximate result thereof, the plaintiff was injured. I know what you're saying. I contend that that allegation is broad enough to encompass our alleged, alleged retained control over the operative details of Platinum's work, because then if you go back and look at Quinn's complaint, Judge, if you look at the third-party complaint directed against Platinum, the same allegation is made against them. So that's where they dovetail. That's where someone did something wrong, and we're not sure who it was. In this underlying case, somebody's saying Martin might have done it wrong, and someone's saying Platinum might have done it wrong, and as a result, Mr. Schwartz got injured. That's last one minute. Okay. So I appreciate the opportunity, though, to get into that, Judge. And I appreciate your clarification. Okay. And I hope it was clear in the brief. There's a lot of detail here, but obviously it's all in the brief. So I think I'll wrap it up there. I would just suggest to you, Judge, that this has to be a case-by-case analysis. Even though the language of Pekin's additional insured endorsement remains static, we don't have an electrocution case. We've got a rebar worker who fell off a cage that someone brought to the site, and that difference has to mean something. I suggest to you here, you know, there's a duty to defend here, and there wasn't in United Contractors. It doesn't need to be, you know, some body of law that additional insurers never get coverage under Pekin endorsement, which I'm sure these guys would like to have the ruling for. But in all seriousness, thanks very much, and I'll conclude my remarks there. I just want to make sure while we wrap up here. You'll have seven days to file your motion for additional authority. Yes, sir. And then you folks will have seven days to respond. Yes, sir. Thank you. Sorry. No, it's fine. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as soon as possible. Right now, I'll stand in a brief recess for panel change.